United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CONCURRENT VENTURES, LLC, et al., | Case No. 25-cv-09567-JST (LB) |
| Plaintiffs, | **DISCOVERY ORDER** |
| v. | Re: ECF No. 197 |
| ADVANCED MICRO DEVICES INC., et al., | |
| Defendants. | |

**INTRODUCTION**

The parties submitted a joint discovery letter brief, raising two categories of disputes: (1) whether the defendants must produce financial and sales data for their CPUs and GPUs and expand their document searches to responsive documents for CPU/GPU business units, and (2) whether the defendants must supplement their response to Interrogatory No. 8 regarding the technical and financial benefits of the Accused Products.[1]

For category 1, Judge Albright denied discovery in the Western District of Texas. The defendants contend that the request for discovery is barred by the law-of-the-case doctrine. It is not: the plaintiffs raise legal theories that Judge Albright did not address. On the merits of the discovery

---

[1] Disc. Letter Br. – ECF No. 197. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 25-cv-09567-JST (LB)

motion, the request to compel production of CPU/GPU financial data (RFP Nos. 72–73) is granted in part. The defendants must produce profit-and-loss data, revenues, marginal costs, pricing, and sales data for CPUs and GPUs sold to customers who also purchased the Accused Products. For the document searches in CPU/GPU business units, the parties must confer on identifying key custodians and reasonable search terms, as discussed below.

For category 2, the defendants must supplement their response to address (a) how they use the Accused Products internally and the benefits derived from that use, and (b) how they account for internal allocations of the Accused Products. The request for information regarding the "sales relationship" between DPUs and CPUs/GPUs is denied without prejudice: the plaintiffs must propound a more targeted interrogatory.

## STATEMENT

Plaintiffs Concurrent Ventures and XtreamEdge claim that defendants Advanced Micro Devices and Pensando Systems infringe five patents (the Asserted Patents). The Asserted Patents allegedly improve the performance of communications between CPUs and other network components by offloading data-heavy computations from CPUs and GPUs to more efficient hardware units designed to handle data computations. The defendants manufacture and sell DPUs — specialized processors used in data centers — that the plaintiffs allege practice the patented technology.[2]

This lawsuit was filed in March 2024 in the Western District of Texas and transferred to this district in November 2025.[3] In Texas, the plaintiffs moved to compel production of CPU/GPU financial data on a convoyed-sales theory. Judge Albright denied that motion on April 7, 2025, without explanation. The plaintiffs did not seek reconsideration.[4]

The court held a hearing on the disputes on April 2, 2026.

---

[2] Am. Compl. (FAC) – ECF No. 142 at 2–7 (¶¶ 1–13); Case-Mgmt. Statement – ECF No. 132 at 2; R. & R. – ECF No. 58 at 1–2.

[3] Compl. – ECF No. 1; Order – ECF No. 121.

[4] Order – ECF No. 95.

ORDER – No. 25-cv-09567-JST (LB)                    2

**LEGAL STANDARD**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at \*1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Moreover, "[t]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at \*1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at \*2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). The court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

**ANALYSIS**

The following sections address (1) whether Judge Albright's order precludes relitigating the relevance of the CPU/GPU financial data, (2) the relevance and proportionality of the financial information relating to CPUs and GPUs, (3) the expansion of searches to CPU/GPU business units, and (4) the supplementation of Interrogatory No. 8.

**1. Law of the Case**

The defendants contend that Judge Albright's denial of the plaintiffs' motion to compel CPU/GPU financial data is law of the case that bars the plaintiffs' current request.[5] The plaintiffs respond that they advance new legal theories, new evidence has emerged, and the recent Federal Circuit opinion in *Exafer Ltd. v. Microsoft Corp.* is an intervening change in the law that allows damages for the products at issue here (DPUs) on the same damages theory that the plaintiffs advance.[6] 169 F.4th 1089 (Fed. Cir. 2026). The law-of-the-case doctrine does not bar the discovery.

The law-of-the-case doctrine is a discretionary doctrine that applies only when the issue in question was "decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (cleaned up). The doctrine

> generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. The doctrine expresses the practice of courts generally to refuse to reopen what has been decided, but it does not limit courts' power.

*Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (cleaned up). The doctrine "does not preclude a court from reassessing its own legal rulings in the same case . . . before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). "The doctrine applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in doing so . . . ." *Id.*

Judge Albright's order is a one-line summary denial without explanation.[7] At minimum, the legal theories that the plaintiffs now advance are different than those advanced before Judge Albright, where they sought CPU/GPU data on a convoyed-sales theory.[8] Now, they seek same data under the theory that (1) they have identified the increased use of CPUs and GPUs as a potential

---

[5] Disc. Letter Br. – ECF No. 197 at 3.

[6] *Id.* at 2.

[7] Order – ECF No. 95 at 5.

[8] *Id.* at 2–5 (includes the defendants' argument that the Federal Circuit's decision in *Wash World Inc. v. Belanger Inc.*, 131 F.4th 1360 (Fed. Cir. 2025), demonstrated that there were no convoyed sales in this case).

non-infringing alternative to the patented technology and (2) the financial information for the non-accused products is relevant to quantify the value provided by the patents.[9] The law-of-the-case doctrine does not apply. The defendants' citation to *Securities Investor Protection Corp. v. Vigman* does not change the analysis: that decision involved the preclusive effect of an appellate decision.[10] 74 F.3d 932, 937 (9th Cir. 1996).

## 2.   Discovery of Financial Information Relating to CPUs and GPUs

The plaintiffs seek financial and sales information — profit-and-loss statements, revenues, marginal costs, pricing, and sales data — for CPUs and GPUs sold to customers who also purchased the Accused Products to show their use as a potential non-infringing alternative to the patented technology and to quantify the value of the patented technology.

### 2.1 The Parties' Arguments

The plaintiffs contend that because DPUs make CPUs and GPUs more efficient, an alternative to using DPUs could be to buy more CPUs and/or GPUs as non-infringing alternatives to DPUs. Financial and sales information are relevant to quantifying damages in the form of the benefits and cost savings to the defendants of the patented technology (and thus the reasonable-royalty analysis of the advantages of the patented technology over alternatives).[11]

The defendants respond that (1) Pensando, the relevant party to the hypothetical negotiation, did not sell CPUs or GPUs; (2) the CPUs/GPUs are not an alternative to practicing any of the asserted claims, and (3) even if they were, Advanced Micro's sales of the products are not relevant because the relevant inquiry is "consideration of the costs and availability" of the non-infringing alternatives at the time of the hypothetical negotiation, meaning how much it would have cost the defendants to offer CPUs/GPUs on the eve of its first infringement, not Advanced Micro's sales of CPUs/GPUs for other purposes.[12]

---

[9] Disc. Letter Br. – ECF No. 197 at 1–2 (citing *Exafer*, 169 F.4th at 1092–93).

[10] *Id.* at 3.

[11] *Id.* at 1.

[12] *Id.* at 3–4.

ORDER – No. 25-cv-09567-JST (LB)                    5

The defendants also challenge the plaintiffs' assertion that the financial data is relevant to calculate a reasonable royalty based on the value that the patents provide to improve the performance of the CPUs/GPUs. For example, the plaintiffs contend that thirty percent of the price of a CPU could be attributed to the patented inventions if using the inventions frees thirty percent of the CPUs' workload. But that value, the defendants contend, is the value to the user of a CPU, not to Advanced Micro. Also, the accused DPUs are commonly used with other CPUs/GPUs made by companies other than Advanced Micro. And the additional value that customers receive (reducing the need for CPUs) is a detriment to Advanced Micro, which would sell fewer CPUs/GPUs.[13]

**2.2 Governing Law**

"A reasonable royalty rate is not necessarily unreliable under Rule 702 because it uses a royalty base associated with an unaccused product." *Exafer*, 169 F.4th at 1093. The facts associated with the alleged infringing activity is "assessed on a case-by-case basis to determine how the parties would value the accused technology during the hypothetical negotiation." *Id.* As an example, "damages theories for claims directed to methods of manufacture commonly use the unaccused product made from the claimed method as the royalty base." *Id.*

In *Exafer*, Exafer's patents related to systems and methods for optimizing communication paths between virtual network devices by controlling data-forwarding rules at intelligent switches. *Id.* at 1091. The district court excluded Exafer's expert damages opinions because the expert used unaccused virtual machines as the royalty base for his damages estimate. *Id.* at 1092. The Federal Circuit reversed. The asserted patents were directed to improving the efficiency and optimization of data flows within virtual networks. Exafer identified the Accused Features on Microsoft's Azure platform as infringing the asserted patents. Exafer's expert opined that the network optimization and efficiency improvements achieved by the claimed inventions had benefits that included the ability to operate more virtual machines on a CPU (i.e., increasing virtual machine density). By increasing density, Microsoft could sell more virtual machines without needing more network infrastructure. The damages analysis captured this incremental benefit of being able to

---

[13] *Id.* at 4.

United States District Court
Northern District of California

offer more virtual machines. This methodology was tethered to the patented invention and did not expand Exafer's patent monopoly to unpatented technology. *Id.* at 1093–94. It was an abuse of discretion to exclude the expert opinion. *Id.* at 1094.

### 2.3 Application

The plaintiffs have articulated a plausible damages theory, at least for discovery. Their contention is that the patented offload technology increases the effective capacity of CPUs and GPUs by offloading tasks to the accused DPUs. The value of that efficiency allegedly can be valued by reference to CPU/GPU cost and pricing data.[14] This theory is like the theory approved in *Exafer*, where the plaintiff measured the value of the patented technology by reference to the increased capacity it provided to non-accused server infrastructure.

The defendants raise legitimate concerns about whether the plaintiffs can establish the required causal connection between the patented technology and Advanced Micro's CPU/GPU revenues. DPUs are used with CPUs and GPUs made by other manufacturers, and the party to the hypothetical negotiation (Pensando) did not itself sell CPUs or GPUs.[15] These are important points, but they go to the weight and ultimate admissibility of the damages evidence, not to its discoverability. At the discovery stage, the plaintiffs need only show that the information is relevant to a claim or defense. The defendants' concerns are properly resolved on a more developed record, for example, at the *Daubert* stage.

The plaintiffs have also identified CPUs and GPUs as potential non-infringing alternatives.[16] Even if this theory requires further development, the costs of non-infringing alternatives are relevant to the reasonable-royalty analysis. Financial data for CPUs and GPUs sold to customers who also purchased the Accused Products bears on this inquiry.

The defendants must produce the requested discovery.

---

[14] *Id.* at 1.

[15] *Id.* at 3–4.

[16] *Id.* at 1.

United States District Court
Northern District of California

### 3. Expansion of Document Searches to CPU/GPU Business Units

The plaintiffs contend responsive documents — particularly those related to how DPUs work with CPUs and GPUs to offload tasks and make them more efficient — are likely to be located in data sources or business units related to CPUs or GPUs.[17] The defendants respond that Pensando is the most likely source for responsive data, they have already produced more than 225,000 pages (including thousands of pages of documentation concerning the performance of DPUs and the benefits of DPUs for CPUs and GPUs), and discovery is not proportional because their "CPU and GPU businesses are responsible for dozens of unaccused products supported by thousands of employees," making the searches costly and burdensome.[18]

Given that the court is ordering the discovery, the parties must confer about whether the defendants can conduct targeted searches, perhaps by identifying key custodians (up to five) and reasonable search terms. DPUs are designed to work with CPUs and GPUs. Advanced Micro seemingly markets the products together in solutions, making it plausible that relevant documents exist in the CPU/GPU business units. But the defendants have produced substantial documentation on DPU/CPU/GPU interactions, and an untargeted search across business units covering unaccused products and many employees is a burden. That militates in favor of an approach to identify key custodians and reasonable search terms.

### 4. Supplementation of Interrogatory No. 8

Interrogatory No. 8 asks the defendants to describe the technical and financial benefits to Advanced Micro and its customers associated with the infringing DPUs:

> Identify in detail all direct and/or indirect financial or other benefits that accrue to You or Your customers, partners, distributors (such as retail establishments), target audience(s) and other users from the Accused Products including, but not limited to, increases in efficiency, decreases in costs, or increased sales of non-accused products. Your answer should include an identification of all Documents and

---

[17] *Id.* at 2.

[18] *Id.* at 4.

Communications related to Your answer (by Bates range) and the three persons most knowledgeable about Your answer.[19]

### 4.1 The Parties' Arguments

The plaintiffs contend that the defendants explain how the Accused Products benefit their customers but do not address how they benefit from the Accused Products by explaining how they use the products. The sales sheet lists the per-unit price for units used internally as $0.00. The defendants have not provided information about the sales relationships between the Accused Products and the defendants' CPUs/GPUs, even though they promote and sell the products together and use the product synergy as a primary selling point.[20]

The defendants contend that (1) their detailed response sets forth the benefits of the Accused Products to Pensando, (2) the plaintiffs did not raise a concern during the meet-and-confer about how the defendants account for internal use or products (listed on a spreadsheet), and (3) the interrogatory did not ask for information about the sales relationship between DPUs, CPUs, and GPUs, and in any event, the defendants have provided information about the relationship and told the plaintiffs that there is no sales relationship.[21]

### 4.2 Analysis

Interrogatory No. 8 asks the defendants to describe the "technical and financial benefits" that accrue to the defendants from the Accused Products. Internal use of the products by the defendants is within the scope of this interrogatory. If the defendants derive technical benefits from deploying DPUs internally — for example, by offloading workloads in their own data-center operations — those benefits are relevant to the damages analysis. Similarly, how the defendants account for internal allocations (listed at $0.00) bears on the economic value that the defendants place on the products. The defendants object to an inadequate meet-and-confer, but there was a meet-and-confer on February 10, 2025, and through written correspondence.[22]

---

[19] *Id.* at 4–5; Interrogs. & Resps., Ex. B to *id.* – ECF No. 196-3 at 12.

[20] Disc. Letter Br. – ECF No. 197 at 4–5.

[21] *Id.* at 5; Interrogs. & Resps., Ex. B to *id.* – ECF No. 196-3 at 12–17.

[22] Disc. Letter Br. – ECF No. 197 at 5; Letters, Exs. I–J to *id.* – ECF Nos. 196-7 & 196-8.

ORDER – No. 25-cv-09567-JST (LB)                    9

United States District Court
Northern District of California

The defendants must supplement their response to describe (a) how they use the Accused Products internally and (b) how internal allocations of the Accused Products are accounted for, including whether they are reflected in financial records.

The defendants have a point about the plaintiffs' demand for an explanation of the "sales relationship" among DPUs, CPUs, and GPUs.[23] The interrogatory asks about benefits, not sales relationships. The defendants contend that they have provided extensive discovery on the relationship between DPUs, CPUs, and GPUs. They have told the plaintiffs that "there is no sales relationship to describe."[24] For this interrogatory, to the extent that the plaintiffs seek broader information about marketing or strategies, it exceeds the scope of Interrogatory No. 8. If the plaintiffs want more information, they must serve a targeted interrogatory.

## CONCLUSION

This resolves ECF No. 197.

**IT IS SO ORDERED.**

Dated: April 6, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[23] Disc. Letter Br. – ECF No. 197 at 5.

[24] *Id.* (cleaned up).

ORDER – No. 25-cv-09567-JST (LB)                    10