United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

CONCURRENT VENTURES, LLC, et al.,

Plaintiffs,

v.

ADVANCED MICRO DEVICES INC., et al.,

Defendants.

Case No. 25-cv-09567-JST (LB)

**DISCOVERY ORDER**

Re: ECF No. 265

## INTRODUCTION

In this patent case, the plaintiffs accuse the defendants' Data Processing Unit (DPU) products of infringing five patents.[1] The court previously ordered the defendants to produce certain financial data for the CPUs and GPUs sold to customers who had also purchased the accused DPU products, as relevant to the plaintiffs' damages theory.[2] The defendants produced the required discovery.[3]

[1] First Am. Compl. (FAC) – ECF No. 142 at 18 (¶ 47), 55–72 (¶¶ 56–124). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 208 at 2; Disc. Letter Br. – ECF No. 197 at 1.

[3] Disc. Letter Br. – ECF No. 265 at 1.

United States District Court
Northern District of California

In the current discovery letter, the parties have disputes: whether the defendants must produce a "SKU key" or other documents sufficient to show the product configurations referenced in the defendants' court-ordered production of CPU/GPU financial documents.[4] In support of their motion to compel, the plaintiffs argue that without a key or explanatory documents, the defendants' production is meaningless because the documents include hundreds of distinct product codes, each corresponding to a unique product configuration, which cannot be deciphered without more information.[5]

The defendants respond that they do not maintain a key (SKU or otherwise) for the CPUs and GPUs, nor is one necessary to understand the produced documents: the produced sales spreadsheet ties the product SKUs to specific product brands, models, and product families.[6] The defendants contend that the plaintiffs' request is actually a request for technical specifications for the CPU and GPU products, which the court did not order, the plaintiffs have not sought, and the case does not need because the CPUs and GPUs are not accused products.[7]

The court can decide the dispute without a hearing. Civil L.R. 7-1(b). The plaintiffs' motion to compel is granted in part and denied in part. Because the defendants have represented that a SKU key for the CPU/GPU products does not exist, they must produce documents sufficient to show the meaning of the product code designations in the produced CPU/GPU financial documents, including the fifteen "material numbers" the plaintiffs were unable to independently translate.[8] If, after a good-faith and reasonable inquiry, the defendants determine that no such documents exist, they must submit a declaration attesting to that and supplying the information that the plaintiffs seek through documents. To the extent the plaintiffs' motion to compel seeks production of technical documents related to the CPUs/GPUs, the motion is denied. The defendants are not required to produce technical information for unaccused products.

---

[4] *Id.* at 2.

[5] *Id.* at 1–2.

[6] *Id.* at 3–4.

[7] *Id.* at 4.

[8] *Id.* at 2–3 & n.2.

United States District Court
Northern District of California

**STATEMENT**

Plaintiffs Concurrent Ventures and XtreamEdge claim that defendants Advanced Micro Devices and Pensando Systems infringe five patents (the Asserted Patents). The Asserted Patents allegedly improve the performance of communications between CPUs and other network components by offloading data-heavy computations from CPUs and GPUs to more efficient hardware units designed to handle data computations. The defendants manufacture and sell DPUs — specialized processors used in data centers — that the plaintiffs allege practice the patented technology.[9] This lawsuit was filed in March 2024 in the Western District of Texas and transferred to this district in November 2025. It was later referred to this court for all discovery disputes.[10]

On April 6, 2026, the court ordered the defendants to produce "profit-and-loss data, revenues, marginal costs, pricing, and sales data" for CPUs and GPUs sold to customers who also purchased the Accused Products.[11] The plaintiffs sought this information to support their damages theory: that without the Asserted Patents, the defendants would have to provide (and pay for) more CPU or GPU resources to provide the same level of functionality in their products.[12] The defendants proceeded to produce the court-ordered discovery.[13]

The plaintiffs now dispute the sufficiency of the defendants' production. They contend that the "important parts" of the produced documents are not human-readable: the defendants' systems refer to the CPU and GPU products using a short-hand SKU code, which the plaintiffs assert is not discernable without a key.[14] One example is from a December 2023 sales sheet, which shows that the defendants sold twenty-four units of a "GN SP3 EPYC 7543 225W 32C" device. The plaintiffs argue that without a key illuminating what each part of these codes mean, the produced sales records are meaningless: they cannot decipher the hundreds of distinct product codes on their own,

---

[9] FAC – ECF No. 142 at 2–7 (¶¶ 1–13); Case-Mgmt. Statement – ECF No. 132 at 2; R. & R. – ECF No. 58 at 1–2.

[10] Case Transfer – ECF No. 122.

[11] Order – ECF No. 208 at 2; Disc. Letter Br. – ECF No. 265 at 1.

[12] Disc. Letter Br. – ECF No. 197 at 1.

[13] Disc. Letter Br. – ECF No. 265 at 1.

[14] *Id.*

each of which corresponds to a unique product configuration with distinct sales, costs, and pricing records.[15] They argue that the solution is simple: the defendants previously produced a SKU key for the Accused Products, and they should produce a similar key for the CPUs/GPUs here.[16]

The defendants have refused to provide a SKU key for the CPUs/GPUs.[17] They assert that they do not maintain a SKU key for the CPUs/GPUs and that the plaintiffs do not need one to understand the produced documents: the produced sales spreadsheet ties the product SKUs to specific product brands, models, and product families.[18] The defendants also contend that any information about the technical specifications of the CPUs/GPUs — which are not accused products — is off limits.[19]

The parties met and conferred on July 15, 2026 but are at an impasse.[20]

## ANALYSIS

### 1. The Defendants Must Provide Information Sufficient to Show the Meaning of the Product Code Designations

The dispute presents a completeness problem. The defendants have produced the court-ordered discovery, but the plaintiffs do not have all the information they need to make sense of those documents. Given the relevance of the underlying information sought — which this court has already recognized — relief is warranted.[21]

The court's April 6, 2026, order held that the plaintiffs are entitled to "profit-and-loss data, revenues, marginal costs, pricing, and sales data" for CPUs and GPUs sold to customers who also bought the Accused Products.[22] This data is only useful to the plaintiffs and their damages theory

[15] *Id.* at 1–2.

[16] *Id.* at 2; Ex. A (SKU key).

[17] Disc. Letter Br. – ECF No. 265 at 2.

[18] *Id.* at 3–4.

[19] *Id.* at 2.

[20] *Id.* at 5.

[21] Order – ECF No. 208 at 2.

[22] *Id.*; Disc. Letter Br. – ECF No. 265 at 1.

if they can tell what products were sold. As of now, they cannot.[23] The plaintiffs' request is thus entirely consistent with what the court has already ordered: to satisfy their court-ordered production obligations, the defendants must provide the plaintiffs with the means to decipher the sales data. That the plaintiffs have not served a separate discovery request for a SKU key for the CPUs/GPUs or for documents sufficient to show the meaning of the product codes does not preclude their request. The discovery has already been determined by the court to be relevant. Now it must be made complete.

The defendants' arguments do not change this result.

The defendants first argue that their production is satisfactory because the sales spreadsheet links the SKUs to the brand, model, and family for each product (i.e., it is a "key").[24] But this information does not explain each of the six parts of the product codes that illuminate a product's specific configuration, and the remaining components are not self-evident.[25]

The defendants next argue that a product's material name is not a "SKU," is not "a standardized six-field ID," and has no existing "key."[26] Each point does not persuade. Whether something is a SKU or not is irrelevant. It is the underlying product information that the plaintiffs need in order to understand what the produced documents say. The same is true for the form of a product's material name. And though the defendants are not required to create new documents to satisfy their discovery obligations, Fed. R. Civ. P. 34, the defendants do not dispute in the letter brief that the information the plaintiffs seek is known to them. If, as the defendants represent, there is no existing document that explains the meaning of the product codes, the defendants must attest to that in a declaration and supply the information the plaintiffs need: the meaning of each product designation that appears in the produced CPU/GPU financial documents and the fifteen material numbers that the plaintiffs were unable to translate on their own.[27]

---

[23] *Id.* at 2.

[24] *Id.* at 4.

[25] *Id.* at 1 (making this point).

[26] *Id.* at 4.

[27] *Id.* at 1–2 & n.2.

The defendants' final argument is a renewed objection to the CPU/GPU discovery as pretextual and irrelevant.[28] The April 6, 2026, order determined that the CPU/GPU financial data is relevant. The analysis stops here. Attacks on the merits of the plaintiffs' damages contentions and theories fall outside the discovery referral.

Finally, as to burden: the defendants do not argue that the plaintiffs' request would impose undue burden. The product codes are of their own design and are in their possession. Explaining what the codes mean should not require any involved search. Fed. R. Civ. P. 26(b)(1).

**2. Any Request for Technical Specifications of the CPUs/GPUs is Denied**

The plaintiffs' only requested relief is an order compelling the defendants "to produce a SKU-key or other documents sufficient to show the product configurations referenced in the previously-produced CPU/GPU financial documents."[29] Even so, the defendants insist that the plaintiffs' request is really a fishing expedition for "production of technical specifications for the CPU and GPU products."[30] The plaintiffs' motion asks only for documents sufficient to show the meaning of product designations in the defendants' CPU/GPU financial documents. They expressly disclaim anything more.[31] This representation will guide discovery going forward. To the extent the plaintiffs' motion to compel seeks production of technical specifications for the CPU/GPU products, the motion is denied. The CPUs and GPUs are not accused products, and discovery into their technical specifications is not permitted without a showing of relevance or need. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 193454, at *2 (N.D. Cal. Jan. 14, 2019). Any disputes on technical discovery may be raised with the court by separate letter brief.

---

[28] *Id.* at 3 & n.4 (quoting Ex. D).

[29] *Id.* at 2.

[30] *Id.* at 4.

[31] *Id.* at 2 & n.3.

United States District Court
Northern District of California

United States District Court
Northern District of California

**CONCLUSION**

The plaintiffs' motion to compel is granted in part and denied in part. Within fourteen days of this order, the defendants must produce documents sufficient to show the meaning of the product code designations in the produced CPU/GPU financial documents, including the product identifications for the fifteen "material numbers" the plaintiffs were unable to translate. If, after a good faith and reasonable inquiry, the defendants determine that no such documents exist, they must submit a signed declaration explaining this and providing the same information the plaintiffs seek through documents. To the extent the plaintiffs' motion to compel seeks production of technical documents related to the CPUs/GPUs, the motion is denied.

**IT IS SO ORDERED.**

Dated: July 31, 2026

LAUREL BEELER
United States Magistrate Judge