UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CONCURRENT VENTURES, LLC, et al.,<br>Plaintiffs,<br>v.<br>ADVANCED MICRO DEVICES INC., et al.,<br>Defendants. | Case No. 25-cv-09567-JST(LB)<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 268 |

## INTRODUCTION

In this patent case, the plaintiffs accuse the defendants' Data Processing Unit (DPU) products of infringing five patents.[1] The parties have three discovery disputes concerning the plaintiffs' email production requests: (1) whether certain search terms are "variants of the same word" and are properly considered a single search term per the ESI Order; (2) whether the defendants must provide the plaintiffs with hit counts for new search terms; and (3) what constitutes a reasonable number of documents for the defendants to review in response to the plaintiffs' email requests.[2]

[1] First Am. Compl. (FAC) – ECF No. 142 at 18 (¶ 47), 55–72 (¶¶ 56–124). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Disc. Letter Br. – ECF No. 268 at 1–5.

United States District Court
Northern District of California

Each party asks for distinct relief on the issues. The plaintiffs move to compel the defendants to (1) treat the terms "DSC," "DPU," and "SmartNIC" as a single search term, (2) provide hit counts for those terms and for their new search term ("AOP OR 'Operating Plan*'"), and (3) produce all non-privileged emails that hit on their proposed search terms (provided in Exhibit A).[3] The defendants oppose the motion and ask the court to (1) find "DSC," "DPU," and "SmartNIC" are three distinct search terms, (2) deny the plaintiffs' requests for new search terms, including the "AOP" term, and (3) limit any document review resulting from the plaintiffs' email requests to 25,000 documents.[4]

The court can decide the dispute without a hearing. Civil L.R. 7-1(b). The plaintiffs' motion to compel is granted in part and denied in part.

The motion is denied as to the "DSC," "DPU," and "SmartNIC" terms: they are not variants of the same word, and they are each treated as a separate search term counting against the plaintiffs' five-terms-per-custodian limit.

The plaintiffs' motion is granted as to hit counts for the ("AOP OR 'Operating Plan*'") term: the defendants must provide hit counts for the term within five days of this order. To the extent that the plaintiffs request searches for any new terms beyond the AOP term, the motion is denied.

Finally, the plaintiffs' motion is denied as to the production of all non-privileged emails hitting on their selected search terms. The court adopts the defendants' proposal of limiting their review of emails in response to the plaintiffs' production requests to 25,000 documents. The plaintiffs may agree to incur the cost of any additional email production beyond the 25,000-document cap.

## STATEMENT

### 1. Case Background

Plaintiffs Concurrent Ventures and XtreamEdge claim that defendants Advanced Micro Devices and Pensando Systems infringe five patents (the Asserted Patents). The Asserted Patents

[3] *Id.* at 1; Emails, Ex. A – ECF No. 268-1 at 6–7.

[4] Disc. Letter Br. – ECF No. 268 at 3.

allegedly improve the performance of communications between CPUs and other network components by offloading data-heavy computations from CPUs and GPUs to more efficient hardware units designed to handle data computations. The defendants manufacture and sell DPUs — specialized processors used in data centers — that the plaintiffs allege practice the patented technology.[5]

This lawsuit was filed in March 2024 in the Western District of Texas and transferred to this district in November 2025. It was later referred to this court for all discovery disputes.[6] Fact discovery closes on August 27, 2026.[7]

**2. Email Production Requests Under the ESI Order**

On February 5, 2026, the parties stipulated to and the court entered the operative ESI Order. The order limits email production requests to a total of five custodians per producing side and five search terms per custodian.[8] The ESI Order provides that "[a] disjunctive combination of multiple words or phrases (*e.g.*, 'computer' or 'system') broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word."[9]

To help the parties arrive at the final custodians and search terms for email discovery, the order "encourages the parties to confer on a process to test the efficacy of the search terms." The ESI Order further provides that email production requests with search terms beyond the limits agreed to by the parties may be grounds for cost-shifting.[10]

---

[5] FAC – ECF No. 142 at 2–7 (¶¶ 1–13); Case-Mgmt. Statement – ECF No. 132 at 2; R. & R. – ECF No. 58 at 1–2.

[6] Case Transfer – ECF No. 122.

[7] Order – ECF No. 231 at 2.

[8] ESI Order – ECF No. 157 at 2–3 (¶¶ 10–11).

[9] *Id.* at 2–3 (¶ 11).

[10] *Id.*

United States District Court
Northern District of California

**3. The Plaintiffs' Email Production Requests**

On May 7, 2026, the parties began discussing email discovery.[11] On May 27, the plaintiffs requested that the defendants collect emails for ten custodians and run 160 search terms, which they would then "narrow . . . based on resulting hit counts."[12] Among the initial proposed search terms were ("DPU" OR "DSC" or "Data Processing Unit" or "Distributed Services Card").[13]

The defendants responded that the proposed terms were excessive and that the plaintiffs "appear to disregard the provision of the [ESI] Order concerning the use of disjunctive[] terms that are not variants of the same word." The defendants asked the plaintiffs to identify five custodians for whom they would like to request email and no more than five search terms per custodian.[14]

The parties went back and forth. The plaintiffs modified their proposed search terms four times; with each modification, they asked the defendants to run hit counts on the proposed terms.[15] The defendants continued to reject the terms as excessive and initially refused to provide hit counts until the plaintiffs "select[ed] the five terms they wish to move forward with."[16]

During these discussions, the plaintiffs represented that they considered "DPU," "DSC," "SmartNIC," and "AINIC" to be variants of the same word, such that their proposed search ("DPU" OR "DSC" OR "Data Processing Unit" OR "Distributed Services Card" OR "SmartNIC" OR "AINIC" OR "AI NIC") counted as one term.[17] The plaintiffs argue that the terms are variants based on the defendants' produced documents, which use the terms interchangeably.[18] The

[11] Emails, Ex. A – ECF No. 268-1 at 51–52.

[12] *Id.* at 45–46; Disc. Letter Br. – ECF No. 268 at 3.

[13] Emails, Ex. A – ECF No. 268-1 at 45–47.

[14] *Id.* at 42.

[15] *Id.* at 6–7, 12–13, 15–16, 31–33.

[16] *Id.* at 11; *see also id.* at 5–6, 29 ("[W]e cannot agree to run 2–3+ times the number of terms the parties agreed to and the Court ordered in February.").

[17] *Id.* at 16, 27.

[18] Disc. Letter Br. – ECF No. 268 at 1–2.

defendants disagree; they contend that the terms are "different words referring to different products that are used for different purposes."[19]

On July 1, 2026, the defendants told the plaintiffs that they would conduct a "sample run" of the plaintiffs' proposed search terms and provide hit counts. The defendants performed an initial search of approximately 100 terms — including "DPU," "DSC," "SmartNIC," and "AINIC" — for six custodians.[20] That initial search resulted in over 1.5 million hits, with tens of thousands attributable to the DPU/DSC/SmartNIC/AINIC terms.[21] The defendants shared the results with the plaintiffs, who modified the search terms and asked for renewed hit counts.[22] The plaintiffs also asked the defendants to run hit counts on a new term — ("AOP" OR "Annual Operating Plan*") — for all custodians.[23] The defendants responded that they would "not add[] additional search terms at this stage" and that they would "not run[] further searches until Plaintiffs identify their terms."[24]

On July 10, 2026, the parties met and conferred.[25] During the meet and confer, the defendants asked the plaintiffs to provide their position on what constitutes a reasonable number of hits for an email search; the plaintiffs stated that a numerical limit was a "non-starter" and that they "might" consider narrowing searches that returned results "into the six figures."[26] The parties were unable to resolve their disputes and are at an impasse.

## LEGAL STANDARDS

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

---

[19] *Id.* at 4; Emails, Ex. A – ECF No. 268-1 at 26.

[20] Disc. Letter Br. – ECF No. 268 at 3–4.

[21] Hit Count Emails, Ex. J – ECF No. 268-10 at 2–10.

[22] Emails, Ex. A – ECF No. 268-1 at 12.

[23] *Id.* at 13; Disc. Letter Br. – ECF No. 268 at 4.

[24] Emails, Ex. A – ECF No. 268-1 at 11; Disc. Letter Br. – ECF No. 268 at 1 & n.1.

[25] Disc. Letter Br. – ECF No. 268 at 6.

[26] *Id.* at 4; DeFosse Email, Ex. K – ECF No. 268-11 at 2 (cleaned up).

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Moreover, "[t]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). The court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

## ANALYSIS

### 1. The "DPU," "DSC," and "SmartNIC" Terms Are Not Variants of the Same Word

The plaintiffs first argue that the defendants' documents show that the terms "DPU," "DSC," and "SmartNIC" are variants of each other, such that they should be considered a single search term.[27] They rely on select quotes from produced documents to argue that the defendants use the terms interchangeably and treat the products as a "single group": e.g., "[a] DSC is a DPU (Data

[27] Disc. Letter Br. – ECF No. 268 at 2.

Processing Unit)"[28]; "DSC=DPU"[29]; "Hardware (DSC/DPU) Image bootup"[30]; Pensando DSCs are "sometimes called a . . . DPU . . . or SmartNIC"[31]; "advanced 'SmartNIC'or 'DPU' applications"[32]; "Pensando DSCs, also known as smart network interface cards (SmartNICs)."[33]

The defendants concede that "in certain circumstances," the "DPU," "DSC," and "SmartNIC" terms may "be used interchangeably."[34] But they contend that that the terms are "different words referring to different products that are used for different purposes": a DPU is a processor, a DSC is a card that may be inserted into a computer, and a SmartNIC/AINIC is a network interface card.[35] The defendants point to other produced documents that distinguish the products from one another — for example, a document titled "Comparing Pensando DSC to SmartNICs,"[36] and a product brief that separately defines "DPU" and "DSC."[37]

On this record, the court cannot conclude that the DPU, DSC, and SmartNIC terms are variants of each other, such that they should be treated as a single search term per the ESI Order. The plaintiffs' most compelling evidence — the documents that say "DSC=DPU" and "[a] DSC is a DPU" — is undercut by the defendants' explanation that certain forms of the products incorporate the other products.[38] That a certain DSC incorporates a DPU does not make the products equivalent; at most, it makes them related, which is not enough to make them "variants of the same word."[39] This conclusion is bolstered by comparison to two terms that the parties have

[28] AMD Presentation, Ex. B – ECF No. 268-2 at 2

[29] AMD-CV-0000600, Ex. C – ECF No. 267-3 at 2

[30] AMD-CV-0005234, Ex. D – ECF No. 268-4 at 2

[31] AMD-CV-0035333–36, Ex. E – ECF No. 267-5 at 2

[32] AMD-CV-0003112, Ex. F – ECF No. 267-4 at 2

[33] AMD-CV-0431008, Ex. I – ECF No. 268-9 at 2

[34] Disc. Letter Br. – ECF No. 268 at 4.

[35] *Id.*

[36] AMD-CV-0154688–90, Ex. M – ECF No. 267-7 at 2

[37] AMD-CV-0038565–67, Ex. L – ECF No. 268-12 at 3

[38] AMD Presentation, Ex. B – ECF No. 268-2 at 2; AMD-CV-0000600, Ex. C – ECF No. 267-3 at 2

[39] Disc. Letter Br. – ECF No. 268 at 4.

agreed to treat as variants: "AMD" and "Advanced Micro Devices."[40] The name of a company and its corresponding acronym are two sides of the same coin; the same cannot be said for three distinct products that are occasionally used together or otherwise have overlapping use cases.[41]

The plaintiffs' alternative argument — that even if the terms are not variants, there is good cause to exceed the five-term limit — is unsupported. Though they handwave at their willfulness and induced infringement theories, the plaintiffs do not articulate why these terms are likely to result in nonduplicative and proportional discovery.[42] Fed. R. Civ. P. 26(b); *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, No. ED-CV-17-1388-AB (KKx), 2019 WL 121195, at *4 (C.D. Cal. Jan. 7, 2019) ("Plaintiff has not attempted to explain what it hopes to uncover from Defendant's emails that have not been produced through other discovery methods.").

The "DSC," "DPU," and "SmartNIC" terms are not variants of the same word and are treated as separate search terms that each count against the plaintiffs' five-terms-per-custodian limit.

**2. The Defendants Must Provide Hit Counts for the ("AOP OR 'Operating Plan*'") Term**

The plaintiffs move to compel the defendants to provide hit counts for the search term ("AOP OR 'Operating Plan*'"). The plaintiffs contend that the defendants have refused to run or provide hit counts for the term because they proposed it late in the parties' search-term negotiation process (July 3, 2026, over a month into the parties' discussions).[43] They argue that nothing in the ESI Order prevents them from proposing new search terms during the testing and negotiation process; and even if there were, there is good cause to "substitute in" the AOP term because its importance "only recently became apparent to Plaintiffs through discovery" and it "could not reasonably have been raised earlier."[44]

---

[40] Emails, Ex. A – ECF No. 268-1 at 38.

[41] Disc. Letter Br. – ECF No. 268 at 2.

[42] *Id.* at 3.

[43] *Id.* at 1–2; Emails, Ex. A – ECF No. 268-1 at 12.

[44] Disc. Letter Br. – ECF No. 268 at 2.

In response, the defendants argue that (1) the plaintiffs' "demand to add new search terms" is improper because the ESI Order limits email requests to five search terms per custodian, which the plaintiffs "already exceeded" with their original ask that defendants run more than 100 terms, and (2) the plaintiffs represented they would "ultimately pick [five search terms] based on the hit counts" if the defendants agreed to run initial searches for those terms.[45]

The ESI Order limits the number of search terms for email production requests to five per custodian. The order is silent on whether that five-term limit applies when the parties are negotiating terms (as the defendants contend) or if the limit only applies to the final terms a party selects to use (the plaintiff's position). The order's contemplation of a "process to test the efficacy" of search terms suggests the latter is more likely.[46] Even so, the testing process cannot continue in perpetuity, particularly where the close of fact discovery is just weeks away.[47]

Without deciding whether the ESI Order's five-terms-per-custodian limit controls the number of search terms a party can request hit counts for during negotiations, the court grants the plaintiffs' motion to compel hit counts for the ("AOP OR 'Operating Plan*'") search term. The plaintiffs represent that they learned of the relevance of the AOP term through other discovery, after they had proposed the initial set of search terms.[48] They should not be foreclosed from testing the efficacy of the term as a result of the late discovery. Once the defendants provide hit counts for the AOP term, the plaintiffs may then make an informed decision about whether they want to use it as one of their allotted five search terms per custodian.

But the AOP term is the end of the road. The plaintiffs cannot request hit counts for any new terms beyond ("AOP OR 'Operating Plan*'"). The close of fact discovery is quickly approaching, the defendants have already run searches for more than one hundred terms, and the parties' back-

[45] Emails, Ex. A – ECF No. 268-1 at 31.

[46] ESI Order – ECF No. 157 at 2–3 (¶ 11).

[47] Fact discovery closes on August 27, 2026. Order – ECF No. 231 at 2.

[48] Disc. Letter Br. – ECF No. 268 at 2.

United States District Court
Northern District of California

and-forth has delayed email review and production for two months.[49] Any requests for new search terms beyond the AOP term are thus denied.

**3. The Defendants' Review Is Limited to 25,000 Documents**

Finally, the parties dispute the number of documents the defendants should be required to review in response to the plaintiffs' email production requests.

The defendants ask the court to limit the number of documents they must review to 25,000, absent a showing of compelling need and cost shifting.[50] They contend that email discovery in patent infringement cases "has limited value because issues of infringement are resolved based on technical documents and source code, not on what someone says about the accused products in an email."[51] They argue that the burden imposed by the plaintiffs' email requests would be significant: the requests implicate over 40,000 documents, review of which would take an estimated three hundred hours and cost "well above a hundred thousand dollars."[52]

The plaintiffs oppose any limitation on the number of documents the defendants must review. They first argue that the defendants' refusal to provide hit counts is "dispositive" of the burden question and requires them to produce all documents hitting on the plaintiffs' search terms, without conducting any responsiveness review.[53] They then argue that 25,000 documents is not enough: because the defendants have already agreed to review 22,000 documents for undisputed search terms, the proposed 25,000-document cap would leave room for just 3,000 documents from the disputed terms.[54]

---

[49] *Id.* at 3; Order – ECF No. 231 at 2.

[50] Disc. Letter Br. – ECF No. 268 at 4–5.

[51] *Id.* at 5 (citing *DCG Sys., Inc. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2011 WL 5244356, at *1 (N.D. Cal. Nov. 2, 2011); *Hoist*, 2019 WL 121195, at *4).

[52] Disc. Letter Br. – ECF No. 268 at 5; July 27 & July 28, 2026, Emails, Ex. N – ECF No. 268-14 at 2–3.

[53] *Id.* at 2.

[54] *Id.*

United States District Court
Northern District of California

The court finds that the defendants' 25,000-document cap is reasonable in light of the demonstrated burden that the plaintiffs' email requests would impose. The defendants have quantified their burden by providing hit counts throughout the parties' negotiations (minus the AOP term discussed above) and estimating the time and cost of reviewing documents hitting on the plaintiffs' search terms (three hundred hours and over one hundred thousand dollars).[55] *Cf. Netskope, Inc. v. Fortinet, Inc.*, No. 22-CV-01852-TLT (AGT), 2025 WL 3190693, at *2 (N.D. Cal. Nov. 14, 2025) (ordering full email production where the defendant failed to quantify burden "by providing, for example, hit counts to [] proposed email search terms"). Courts in this district have recognized that there are diminishing returns to email discovery in patent infringement cases. *See, e.g.*, *DCG Sys., Inc. v. Checkpoint Techs., LLC*, Case No. 11-cv-03792-PSG, 2011 WL 5244356, at *1–2 (N.D. Cal. Nov. 2, 2011). Though the requested email discovery might be relevant to their induced infringement and willfulness theories, *Competitive Access Sys. v. Apple Inc.,* No. 25-CV-04595-PCP (VKD), 2025 WL 3496692, at *3 (N.D. Cal. Dec. 5, 2025), the plaintiffs have not demonstrated that the requested emails are of such "high probative value" that the corresponding burden to the defendants is justified. *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-CV-00119-HSG (KAW), 2018 WL 4613151, at *7 (N.D. Cal. Sept. 26, 2018). And the plaintiffs' concern that 3,000 documents for the disputed terms is not enough may be mitigated by the court's ruling on the "DPU," "DSC," and "SmartNIC" terms, which will inherently cull the number of documents that the plaintiffs' search terms hit on.

The defendants will bear the cost of review and production of up to 25,000 documents in response to the plaintiffs' email production requests. The plaintiffs may agree to incur the cost of any additional email production.

---

[55] *See* Hit Count Emails, Ex. J – ECF No. 268-10 at 2–10.

United States District Court
Northern District of California

## CONCLUSION

This resolves ECF No. 268.

**IT IS SO ORDERED.**

Dated: August 17, 2026

LAUREL BEELER
United States Magistrate Judge